**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**TRACY THOMPSON,**

       **Plaintiff,**

**v.**

**THE OHIO STATE UNIVERSITY, et al.,**

       **Defendants.**

**Case No. 2:12-cv-1087**
**JUDGE GREGORY L. FROST**
**Magistrate Judge Deavers**

## OPINION AND ORDER

This matter is before the Court on Defendants' motion to dismiss Plaintiff's amended complaint under Fed. R. Civ. P. 12(b)(6) (ECF No. 29), Plaintiff's memorandum in opposition (ECF No. 33), and Defendants' reply in support (ECF No. 34). Defendants seek dismissal on the ground that Plaintiff's substantive allegations fail to state a relief upon which relief can be granted; alternatively, the individual defendants seek dismissal of the claims against them on the ground of qualified immunity.

For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion. The Court dismisses Count II of Plaintiff's amended complaint, alleging a 42 U.S.C. § 1983 claim based on substantive due process. Count I (First Amendment retaliation), Count III (equal protection), and Count IV (Title VI of the Civil Rights Act) survive dismissal on the pleadings and may go forward.

**I.**

Plaintiff Tracy Thompson brings this action against Defendants The Ohio State University ("OSU" or "the University") and three individuals, alleging claims under 42 U.S.C. § 1983 and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. Plaintiff's amended

1

complaint alleges the following facts, which the Court treats as true for purposes of determining whether Plaintiff states a valid claim for relief. *See Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996).

In the fall of 2009, Plaintiff enrolled in the Master's in Health Administration Program at OSU's College of Public Health. Of the approximately 31 students in the Master's program, Plaintiff was the only African-American. When she enrolled, Plaintiff anticipated that she would graduate with her Master's degree in the spring of 2011.

During the winter 2010 quarter, Plaintiff took a Health Care Operations course taught by Defendant Sharon Schweikhart, Ph.D., who is white. During her time in Dr. Schweikart's class, Plaintiff began to feel as though Dr. Schweikhart disliked her and singled her out for mistreatment. For example, when Plaintiff failed a midterm examination and asked Dr. Schweikhart how she could improve her performance in the class, Dr. Schweikhart responded by saying simply that Plaintiff should "figure it out." Other students in the class noticed Dr. Schweikhart's behavior toward Plaintiff. Classmates told Plaintiff that Dr. Schweikhart "hates [Thompson's] guts" and that they felt Dr. Schweikhart's treatment of Plaintiff was inappropriate.

During the fall 2010 quarter, Plaintiff took a Health Care Information Systems course, also taught by Dr. Schweikhart. During that quarter, Plaintiff submitted a paper in which she utilized a particular informal citation style that Dr. Schweikhart instructed the class to use. Despite the paper being cited in the manner she instructed, Dr. Schweikhart complained to OSU's Committee of Academic Misconduct, accusing Plaintiff of plagiarism. Despite the fact that other students in the class used the same citation style, Dr. Schweikhart did not accuse any of the white students of plagiarism. Plaintiff was the third student whom Dr. Schweikhart

referred for academic misconduct during her 20 years as an OSU professor.  Of the three students Dr. Schweikhart has ever referred for academic misconduct, all were African-American.

In January 2011, Thompson complained to OSU's Office of Student Advocacy and Office of Human Resources about Dr. Schweikhart.  Specifically, Plaintiff complained that Dr. Schweikhart was discriminating against her on the basis of race.  Plaintiff made similar complaints of race discrimination to other departments within the University.  The University did not investigate Plaintiff's complaints of race discrimination.

The plagiarism charge against Plaintiff went to a hearing before OSU's Committee of Academic Misconduct.  Plaintiff was not permitted to discuss or present evidence of the fact that other students in the class used the same citation style Plaintiff had used on the paper in question.  Following the hearing, the Committee found Plaintiff guilty of plagiarism.  As a sanction, the Committee gave Plaintiff a failing grade in the Health Care Information Systems course and suspended Plaintiff for the following spring and summer quarters.  The conditions of Plaintiff's suspension stated—

> A student who has been dismissed or suspended from the university shall be denied all privileges afforded a student and shall be required to vacate campus at a time determined by the hearing officer or panel.  In addition, after vacating campus property, a suspended or dismissed student may not enter upon campus and/or other university property at any time, for any purpose, in the absence of express written permission from the vice president for student affairs or his/her designee.  To seek such permission, a suspended or dismissed student must file a written petition to the vice president for student affairs for entrance to the campus for a limited, specified purpose or to have the terms of his condition modified or reduced.

Plaintiff unsuccessfully appealed the Committee's decision and sanction.  Because the suspension did not take effect until the spring quarter, Plaintiff was allowed to complete the winter quarter that was ongoing at the time the Committee handed down its decision.

While she was suspended, Plaintiff inquired of various faculty members in her program at OSU for guidance on how she should proceed towards her degree once her suspension was lifted. When Plaintiff's communications were ignored, Plaintiff communicated in writing to Dr. Javaune Adams-Gaston, the Vice President for Student Life,[1] and Dr. Stanley Lemeshow, Dean of the College of Public Health.  Plaintiff asked Drs. Gaston and Lemeshow for a meeting to discuss Plaintiff's continued pursuit of her degree.  Plaintiff's letter mentioned her concerns about racial discrimination and Plaintiff's desire to continue in the Master's program without being subjected to further discriminatory treatment.  Plaintiff did not receive a response.

Plaintiff's suspension meant that her graduation from the Master's program would be delayed by one year. Even though the suspension covered only two quarters, the only remaining class that Plaintiff needed to complete her degree was offered only during the spring quarter. Because Plaintiff's suspension became effective during spring quarter, Plaintiff had to wait until the following spring to take the course and complete her degree requirements.

At the time of Plaintiff's suspension, Plaintiff was enrolled in a "Six-Sigma" course at the University's College of Business.  The course was a six credit hour class that spanned from winter quarter through the first half of the spring quarter.  Thus, due to the terms of the suspension, Plaintiff would have been unable to complete the Six-Sigma course.  Plaintiff therefore met with Dr. Adams-Gaston to ask whether she could obtain permission to complete the six-sigma course notwithstanding the suspension.  According to Plaintiff, Dr. Adams-Gaston told her it was acceptable for Plaintiff to complete the Six-Sigma course so long as it was also acceptable to the professor.  At Plaintiff's request, the Six-Sigma professor agreed to allow Plaintiff to complete the course.

_____

[1] Plaintiff's amended complaint alleges that the Vice President for Student Life at OSU is also known as the Vice-President for Student Affairs.

4

In order to complete her work in the Six-Sigma course, it was necessary for Plaintiff to go on campus on a number of occasions. On each of these occasions, Plaintiff obtained permission from Dr. Adams-Gaston to be on campus. Plaintiff ultimately completed the course and then completed the rest of her suspension.

Not long after Plaintiff's suspension period ended, Plaintiff learned that she was being charged with two new violations of the University Student Conduct Policy. Specifically, Plaintiff was charged with "dishonest conduct" and "failure to comply with sanctions." Defendant Ann Salimbene, Ph.D., was the individual responsible for filing the misconduct charges against Plaintiff. According to Plaintiff, Dr. Salimbene is a friend and colleague of Dr. Schweikhart.

The gravamen of the misconduct charges against Plaintiff was that she did not receive proper permission to enter upon campus to complete the Six-Sigma course. According to the charges, Dr. Adams-Gaston lacked the authority to permit Plaintiff to complete the Six-Sigma course and that Plaintiff should have known that Dr. Adams-Gaston lacked such authority. It was Plaintiff's position that Dr. Adams-Gaston was the specific person from whom she had to obtain permission to enter campus under the terms of the suspension.

The charges against Plaintiff proceeded to a hearing before the University Conduct Board. Dr. Salimbene argued in favor of disciplining Plaintiff. Following the hearing, the Conduct Board found in favor of Plaintiff on the dishonest conduct charge. The Conduct Board, however, found that Plaintiff failed to comply with a sanction. As a result of its finding, the Conduct Board suspended Plaintiff from the University from March 9, 2012 through August 12, 2012.

Plaintiff appealed the ruling.  Defendant Gretchen Metzlaars, Ph.D., the Senior Associate Vice President in the Office of the Vice President for Student Life, presided over Plaintiff's appeal.  Dr. Metzlaars denied Plaintiff's appeal, finding that "all circumstances were considered during your judicial process and that the disciplinary process was appropriate."  Dr. Metzlaars accordingly upheld the sanction issued by the Conduct Board.  Because of the suspension, Plaintiff's graduation from the Master's program was delayed for another year.

Plaintiff commenced this action, naming OSU, Dr. Schweikhart, Dr. Salimbene, and Dr. Metzlaars as Defendants.  In her amended complaint, Plaintiff alleges claims under 42 U.S.C. § 1983 for First Amendment retaliation (against Dr. Salimbene), violation of substantive due process (against Drs. Salimbene and Metzlaars), and race discrimination (against Drs. Schweikhart and Salimbene).  (ECF No. 23 at PageID# 99-101.)  Plaintiff also alleges a claim against the University for race discrimination in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.  (*Id.* at PageID# 101-02.)   Defendants move to dismiss the amended complaint in its entirety under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  (ECF No. 29.)  Alternatively, individual Defendants Salimbene, Metzlaars, and Schweikhart move for dismissal of the claims against them on qualified immunity grounds.

## II.

Defendants move for dismissal of this action under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which the Court can grant relief.  When ruling upon a Rule 12(b)(6) motion, the Court is required to accept the well pleaded factual allegations contained in the pleading as true, construe them in the light most favorable to the non-moving party, and determine whether the factual allegations present any plausible claim.  *See Bell Atl. Corp. v. Twombly*, 550 U.S.

554, 570 (2007).  The Supreme Court has explained, however, that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Consequently, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

A complaint must present "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  To be considered plausible, a claim must be more than merely conceivable.  *Twombly*, 550 U.S. at 556; *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  The factual allegations of a pleading "must be enough to raise a right of relief above the speculative level . . . ."  *Twombly*, 550 U.S. at 555.  *See also Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008).

### III.

In Counts I, II, and III of the amended complaint, Plaintiff alleges separate claims under 42 U.S.C. § 1983 against the individual Defendants.  Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Thus, in order to assert valid § 1983 claims, Plaintiff must show that Defendants, while acting under color of state law, deprived her of a right secured by the Federal Constitution or laws of the United States.  *See Alkire v. Irving*, 330 F.3d 802, 813 (6th Cir. 2003).

In their motion to dismiss the § 1983 claims, the individual Defendants do not challenge the allegation that they acted under color of state law.  Rather, they argue that Plaintiff has failed to allege a cognizable violation of a constitutional right.  Alternatively, the individual Defendants claim that the doctrine of qualified immunity shields them from § 1983 liability.

### A.  First Amendment Retaliation

In Count I of her amended complaint, Plaintiff alleges that Defendant Salimbene retaliated against her in violation of Plaintiff's rights under the First Amendment to the United States Constitution.  Plaintiff alleges that her complaints about perceived race discrimination at OSU were protected expressions under the First Amendment and that Dr. Salimbene brought student misconduct charges against Plaintiff in retaliation for Plaintiff's complaints.  Plaintiff also contends that Dr. Salimbene brought these charges against Plaintiff even though she knew they were bogus.

To survive dismissal, a plaintiff pleading a First Amendment retaliation claim must allege that (1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct.  *Wurzelbacher v. Jones-Kelly*, 675 F.3d 580, 583 (6th Cir. 2012).  Dr. Salimbene concedes, for purposes of the motion to dismiss, that Plaintiff's complaints about race discrimination satisfy the first element.  (Defs.' Mot., ECF No. 29 at PageID# 117.)  Dr.

8

Salembene argues, however, that Plaintiff "fails to plead facts" in support of the second and third elements.

As to the second element, Dr. Salimbene contends: "Plaintiff identifies Dr. Salimbene's conduct charge against her as the adverse retaliatory action, but she fails to plead that the alleged adverse action caused her to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity."  The Court disagrees.  The amended complaint alleges that Dr. Salimbene filed charges against Plaintiff, alleging that Plaintiff violated the University Student Conduct Policy.  (Am. Compl. ¶ 53, ECF No. 23.)  Those charges ultimately led to Plaintiff's suspension from the University and a resulting one-year delay in Plaintiff's graduation from the Master's program in Health Administration.  (*Id.* at ¶¶ 63, 69.)  To the extent Dr. Salimbene alleges that the filing of charges is not enough of an adverse action to chill a person of ordinary firmness, the Court is unpersuaded.  Whether an alleged adverse action is sufficient to deter a person of ordinary firmness from engaging in protected conduct is generally a question of fact.  *Wurzelbacher*, 675 F.3d at 583-84 (citing *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002)).

As to the third element, Dr. Salimbene contends that "Plaintiff pleads no facts in support of the retaliation claim's causation element."  (ECF No. 29 at PageID# 118.)  She complains that Plaintiff merely makes the conclusory allegation that Dr. Salimbene brought charges against Plaintiff in retaliation for Plaintiff's race discrimination complaints against Dr. Schweikhart.  Dr. Salimbene further argues that Plaintiff fails to plead that Dr. Salimbene knew of the complaints against Dr. Schweikhart.  (*Id.*)  Thus, Dr. Salimbene argues that Plaintiff has failed to make any connection between Plaintiff's speech and the adverse action, rendering her incapable of stating a claim for First Amendment retaliation.  (*Id.*)

The Court is not persuaded by Dr. Salimbene's argument.  The amended complaint alleges the following—

- "Dr. Salimbene was motivated to pursue these charges against Thompson due to Thompson's race, and in retaliation for Thompson's allegations of race discrimination against Salimbene's colleague and friend, Dr. Schweikhart." (Am. Compl., ¶ 55.)

- "Dr. Salimbene brought these charges against Thompson . . . with a retaliatory motive due to Thompson's complaints about race discrimination, which angered and upset Salimbene and caused her to retaliate against Thompson."  (*Id.* at ¶ 56.)

These are not conclusory or threadbare recitals.  As to Dr. Salimbene's motivation, the Court is puzzled as to what more Plaintiff was required to plead.  Moreover, "[a] defendant's motivation for taking action against the plaintiff is usually a matter best suited for the jury." *Paige v. Coyner*, 614 F.3d 273, 282 (6th Cir. 2010).

Dr. Salimbene's argument with regard to whether Plaintiff has adequately pleaded Dr. Salimbene's knowledge of Plaintiff's protected activity is equally unpersuasive.  What Dr. Salimbene seems to be looking for is the rote allegation that "Salimbene knew of Plaintiff's race discrimination complaints."  But the Court fails to see why this is necessary.  A plaintiff is not required to plead particular facts with specific reference to elements of a cause of action; a plaintiff need only plead factual matter that makes a plausible claim for relief.  *See Twombly*, 550 U.S. at 570.  Plaintiff has done that here with her allegations about Dr. Salimbene's motivation and her anger at Plaintiff's complaints levied against Dr. Schweikhart.  Dr. Salimbene's knowledge of Plaintiff's protected activity is implicit in these allegations.  Indeed, Dr. Salimbene could not be motivated or angered by Plaintiff's activity if she did not know about it.  Thus, while the amended complaint does not plead the magic words "Dr. Salimbene knew," it pleads

enough facts from which to infer Dr. Salibene's knowledge of the protected activity.  *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Defendants cite *Espinal v. Goord*, 554 F.3d 216, 229-30 (2d Cir. 2009), for the proposition that a plaintiff must allege that the defendants were aware of the protected activity in order to state a claim for retaliation.  But *Espinal* does not say that.  In that case, which was before the court of appeals on an appeal from a *summary judgment* the court found a genuine issue of material fact as to whether a defendant was aware of protected activity.  *Id.* at 230.  In doing so, the court of appeals reversed the district court's decision finding no evidence that the defendant knew of the plaintiff's protected activity.  *Espinal* does not stand for any proposition relating to the pleading requirements for a First Amendment retaliation claim to avoid dismissal under Fed. R. Civ. P. 12(b)(6).

Defendants also cite *McLaughlin v. Pezzolla*, No. 06-cv-376, 2010 U.S. Dist. LEXIS 232 (N.D.N.Y. Jan. 4, 2010), for the same proposition.  But it is dubious, at best, to conclude that *McLaughlin* sets forth any rule regarding sufficient allegations in a complaint.  The passage relied on by Defendants states: "Without allegations regarding the individual Defendants' knowledge of the protected speech, Plaintiff has not sufficiently plead a claim of retaliation *and summary judgment* will be granted as to those Defendants."  *Id.* at *37 (emphasis added).  The court then proceeded to analyze whether the record contained *evidence* from which a reasonable factfinder could conclude that the defendants knew about the plaintiff's protected activity.  *Id.* at *37-40.  Given its emphasis on *evidence* in the record on a *motion for summary judgment*,

*McLaughlin* is weak authority, at best, for what the *pleading* requirements are for a plaintiff to overcome a *motion to dismiss* a First Amendment retaliation claim.

Plaintiff's amended complaint states a claim for First Amendment retaliation against Dr. Salimbene.

### B.  Qualified Immunity for First Amendment Retaliation

Having rejected Defendant Salimbene's argument that Plaintiff fails to state a claim for First Amendment retaliation, the Court proceeds to Dr. Salimbene's alternative argument that she is entitled to qualified immunity from liability.  The doctrine of qualified immunity operates under certain circumstances to shield from civil liability governmental officials who are performing official duties.  *Sinick v. Summit*, 76 F. App'x 675, 679 (6th Cir. 2003). The affirmative defense shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

In addressing the potential applicability of qualified immunity, courts use a two-step analysis. First, the Court must look at "whether, considering the allegations in a light most favorable to the injured party, a constitutional right has been violated"; second, the Court must determine "whether that right was clearly established" at the time of the incident in question. *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 786 (6th Cir. 2012) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)); *Simmonds v. Genessee Cnty.*, 682 F.3d 438, 443-44 (6th Cir. 2012). The Court need not consider these steps in order; it may consider either step first.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  The relevant inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable official that his or her conduct was unlawful in the situation he or she confronted.  *Saucier*, 533 U.S. at 202.

Although qualified immunity is typically addressed at the summary judgment stage of the case, a court may consider the defense on a motion to dismiss brought under Fed. R Civ. P. 12(b)(6). *Hardy v. Jefferson Cmty. College*, 260 F.3d 671, 677 (6th Cir. 2001). The court will grant the motion if the plaintiff's complaint fails to allege the violation of a clearly established constitutional right. *Id.*

Defendants argue that Plaintiff has failed to allege that Dr. Salimbene violated a clearly established constitutional right to be free from First Amendment retaliation. Though Defendants concede that "certain speech is protected and that retaliatory action based on that speech violates a constitutional right," Defendants nevertheless argue that there was no "clearly established law" that would have put Dr. Salimbene on notice that the "mere filing of a conduct charge" would be an adverse action for First Amendment retaliation purposes. (Defs.' Mot., ECF No. 29 at PageID# 120.)

The Court is not persuaded by Defendants' argument. It is not necessarily true that the exact factual circumstances alleged in a given case must have been found to be a constitutional violation before a right can be "clearly established" for purposes of a qualified immunity analysis. The United States Supreme Court has recognized that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). "When a general constitutional principle 'is not tied to particularized facts,' the principle 'can clearly establish law applicable in the future to different sets of detailed facts.'" *Sample v. Bailey*, 409 F.3d 689, 699 (6th Cir. 2005) (quoting *Harris v. Coweta County*, 406 F.3d 1307, 2005 U.S. App. LEXIS 6721, 2005 WL 901889, at *8 (11th Cir. Apr. 20, 2005)). The determinative issue is whether the officer had "fair warning that his conduct deprived [the plaintiff] of a constitutional right." *Hope*, 536 U.S. at 740 (internal quotation omitted).

In this case, Plaintiff alleges that Dr. Salimbene initiated student misconduct charges against Plaintiff in retaliation for Plaintiff's allegations of race discrimination against Dr. Salimbene's colleague and friend, Dr. Schweikhart.  (Am. Compl. ¶ 55.) Plaintiff further alleges that Dr. Salimbene initiated these charges knowing that there was "no rational or reasonable basis for the charges she pursued against [Plaintiff]."  (*Id.*)

When viewed in the light most favorable to Plaintiff, the amended complaint alleges that Dr. Salimbene retaliated against Plaintiff for exercising her First Amendment right to complain about perceived race discrimination by Dr. Schweikhart in the Master's program.  In the context of a retaliation claim, the focus of the qualified immunity analysis is on the retaliatory intent of the defendant.  *See Bloch v. Ribar*, 156 F.3d 673, 682 (6th Cir. 1998) (collecting cases from other circuits).  For purposes of assessing Dr. Salimbene's claim of qualified immunity, it is clearly established that a public official's retaliation against an individual for exercising First Amendment rights violates 42 U.S.C. § 1983.  *Id.*; *see also AbdulSalaam v. Franklin Cnty. Bd. of Comm'rs*, 637 F. Supp. 2d 561, 584-85 (S.D. Ohio 2009) (denying qualified immunity in First Amendment retaliation case; public official should have known that fabricating evidence against plaintiff in retaliation for complaining about a children's services agency investigation violated clearly established First Amendment rights).  Accordingly, the Court finds that Dr. Salimbene is not entitled to a Rule 12(b)(6) dismissal based on qualified immunity.

### C.  Substantive Due Process

In Count II, Plaintiff alleges a § 1983 claim against Defendants Salimbine and Metzlaars based on violation of her substantive due process rights under the Fourteenth Amendment to the United States Constitution.  Plaintiff bases this claim upon the second suspension levied against her, which resulted in a year long delay in Plaintiff's graduation from the Master's program.  The

gravamen of the substantive due process claim is that (1) Dr. Salimbene pursued "improper

charges" and "advocated for the improper discipline" and (2) Dr. Metzlaars "reviewed, affirmed,

and imposed the baseless, indefensible, and absurd sanction" of suspension against Plaintiff.

(Am. Compl. ¶ 80.)

   The legal basis of Plaintiff's substantive due process claim is "the right to be free of

'arbitrary and capricious' action by government actors." *Bowers v. City of Flint*, 325 F.3d 758,

763 (6th Cir. 2003) (quoting *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir.

1992)).  As the Sixth Circuit has held, the "arbitrary and capricious" standard set forth in

*Pearson* "is simply another formulation of, but is no less stringent than, the more traditional

'shocks the conscience' standard" enunciated by the Supreme Court.  *Id.* (citing *Sacramento v.

Lewis*, 523 U.S. 833, 847 (1998)).  Thus, Plaintiff's § 1983 claim based on substantive due

process can escape Rule 12(b)(6) dismissal only if the allegations in the amended complaint state

a cognizable claim that the actions of Dr. Salimbene and Dr. Metzlaars shock the conscience in

the constitutional sense.

   As an initial matter, the Court analyzes the substantive due process claim under the

assumption that the pursuit of charges and the imposition of the suspension against Plaintiff were

not motivated by either First Amendment retaliation or race discrimination.  This is because

claims of First Amendment retaliation and race discrimination are protected by other parts of the

Constitution, obviating the need to resort to the substantive due process doctrine.  "Where a

particular Amendment provides an explicit source of constitutional protection against a particular

sort of government behavior, that Amendment, not the more generalized notion of 'substantive

due process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266,

273 (1994) (internal quotation omitted).  Here, any claims that Defendants pursued punishment

against Plaintiff in retaliation for her complaints or for racially discriminatory reasons are more appropriate resolved through vindication of rights under the First Amendment and the Equal Protection Clause, respectively.  *See id.*

To establish that the conduct complained of in this case is "conscience shocking," therefore implicating substantive due process principles, Plaintiff alleges that Dr. Salimbene filed charges against her for violating the terms of Plaintiff's suspension, *knowing* that there was no rational basis for those charges.  (Pl.'s Opp'n, ECF No. 33 at PageID# 146.)  With this allegation against Dr. Salimbene, Plaintiff is attempting to invoke the rule "that in a non-custodial setting," a plaintiff may establish § 1983 liability for violations of substantive due process when "the governmental actor either intentionally injured the plaintiff or acted arbitrarily in the constitutional sense."  *Upsher v. Grosse Pointe Pub. Sch. Sys.*, 285 F.3d 448, 453 (6th Cir. 2002); *see also Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Edn.*, 542 F.3d 529, 538 (6th Cir. 2008).  But even assuming this rule is applicable to the university discipline setting (and Plaintiff cites no case for the proposition that it does), Plaintiff fails to state a valid substantive due process claim for relief against Dr. Salimbene. The allegations in Plaintiff's amended complaint establish only that Dr. Salimbene initiated the student misconduct charges against Plaintiff; Dr. Salimbene did not impose the allegedly arbitrary suspension against Plaintiff.  It was the University Conduct Board that issued the ruling against Plaintiff.  Accordingly, the harm of which Plaintiff complains—even if the suspension can be characterized as harm in the constitutional sense—was not imposed by Dr. Salimbene.

Nor can Plaintiff state a claim for a substantive due process violation against Dr. Metzlaars, who affirmed on appeal the punishment levied by the University Conduct Board. (Am. Compl. ¶¶ 65-66.)  As against Dr. Metzlaars, the viability of Plaintiff's substantive due

16

process claim depends upon whether the punishment levied against Plaintiff can be deemed arbitrary or conscience-shocking under constitutional standards.  "In the context of school discipline, a substantive due process claim will succeed only in the 'rare case' when there is 'no rational relationship between the punishment and the offense.'"  *Seal v. Morgan*, 229 F.3d 567, 575 (6th Cir. 2000) (quoting *Rosa R. v. Connelly*, 889 F.2d 435, 439 (2d Cir. 1989)).

Plaintiff argues that Dr. Metzlaars' affirmance of the multi-quarter suspension shocks the conscience as an "arbitrary and capricious punishment" because it was an unduly harsh penalty for Plaintiff "honestly relying on the terms of the suspension as presented to her and on the permission of the vice-president of student affairs of the University."  (Pl.'s Opp'n, ECF No. 33 at PageID# 147-48.)  But in order to prevail on this theory of liability, Plaintiff would need to have this Court override the factual determinations and judgment of the University Conduct Board, which deemed Plaintiff to have violated the terms of her first suspension, and of Dr. Metzlaars, who upheld the Board's conclusion.  "It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion."  *Wood v. Strickland,* 420 U.S. 308, 326 (1975).

Moreover, Plaintiff does not state a claim based on her punishment being "arbitrary and capricious" when compared with the misconduct offense that Dr. Metzlaars upheld.  A multi-quarter suspension levied for violating the terms of a previously-imposed suspension does not shock the conscience in the constitutional sense.  It is not disproportionate on its face for the University to impose a second suspension on an individual found to have violated the terms of a first suspension.

For these reasons, the Court dismisses Count II of Plaintiff's Complaint for failure to state a valid claim for § 1983 relief based on substantive due process.  Because the Court finds

Plaintiff has failed to state a cognizable constitutional violation based on substantive due process, the Court need not examine whether Drs. Salimbene or Metzlaars are entitled to the protection of qualified immunity as to Count II.

### D.  Equal Protection

In Count III of the amended complaint, Plaintiff alleges a § 1983 race discrimination and retaliation claim against Defendants Schweikhart and Salimbene.  As against both of these Defendants, Plaintiff alleges that they denied her equal protection under the law by discriminating against her on the basis of race.  (Am. Compl. ¶ 86.)  In addition, Plaintiff alleges that Dr. Salimbene retaliated against Plaintiff for making race discrimination complaints against Dr. Schweikhart.  (*Id.* ¶ 87.)

To state a claim under § 1983 based upon the Equal Protection Clause, a plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class or burdened a fundamental right.  *Midkiff v. Adams Cnty. Reg. Water Dist.*, 409 F.3d 758, 770 (6th Cir. 2005); *Purisch v. Tenn. Tech. Univ.*, 76 F.3d 1414, 1424 (6th Cir. 1996).  Plaintiff has done just that in her amended complaint: she alleges that Defendants discriminated against her on the basis of race, treating her differently than her white classmates with regard to the report of perceived misconduct. Plaintiff also alleges that Dr. Salimbene pursued charges against Plaintiff not only based on race but in retaliation for Plaintiff having complained of race discrimination perpetrated by Dr. Schweikhart.

Despite Plaintiff's allegations fitting within the parameters of what must be pleaded for a valid Equal Protection claim under § 1983, Defendants argue that Plaintiff has failed to plead a *prima facie* case of race discrimination under the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which applies to employment discrimination cases under federal

law and which the Sixth Circuit has applied to race discrimination claims brought under 42 U.S.C. § 1981.  *See Bell*, 351 F.3d at 252-53.  Specifically, Defendants contend that Plaintiff does not identify a similarly situated white classmate treated differently from her.  (Defs.' Mot., ECF No. 29 at PageID# 124.)  Insisting that "[s]ome facts are necessary" to support Plaintiff's claim, Defendants argue that the amended complaint's failure to identify a similarly situated individual outside of Plaintiff's protected class must result in dismissal of her equal protection claim.  (*Id.*)

Defendants argument is unpersuasive.  A race discrimination plaintiff need *not* plead facts that constitute a prima facie case under the framework of *McDonnell Douglas* in order to survive a motion to dismiss. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002); *see also Serrano v. Cintas Corp.*, 699 F.3d 884, 888 (6th Cir. 2012) (noting that *Swierkiewicz* remains good law even after *Twombly*).   So long as a complaint provides an adequate factual basis for a race discrimination claim, the plaintiff has satisfied the pleading requirements. *Id.  See also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.") (quoting *Twombly*, 550 U.S. at 555; internal quotations omitted).  Plaintiff's amended complaint alleges enough to escape Rule 12(b)(6) dismissal in this case.  Plaintiff has alleged that—

- Dr. Schweikhart levied charges of plagiarism against only Plaintiff even though white students in her class utilized the same citation format that formed the basis of the plagiarism accusation (Am. Compl. ¶ 21);

- During her career, Dr. Schweikhart had referred three students for academic misconduct charges, all of whom were African-American, despite the fact that she

had taught more than ten times as many white students as African-American students (*id.* ¶¶ 25-29);

- Dr. Salimbene was angered and upset at the race discrimination charges that Plaintiff brought against her colleague and friend, Dr. Schweikhart (*id.* ¶ 55);

- Dr. Salimbene knew the misconduct charges against Plaintiff were unfounded and brought them in retaliation for Plaintiff's allegations of race discrimination (*id.* ¶ 56).

It remains to be seen whether Plaintiff can back up these allegations with evidence sufficient to overcome summary judgment, much less prove them at trial. But she has alleged enough to overcome dismissal under Rule 12(b)(6).

### E.  *Qualified Immunity from Race Discrimination Allegations*

Alternatively, Defendants Schweikhart and Salimbene argue that they are entitled to qualified immunity from § 1983 liability based on race discrimination.  Defendants say that it was not "clearly established" that reporting Plaintiff for misconduct was an "adverse action" for purposes of an equal protection analysis.  In the Court's view, however, the proper inquiry at this stage is the alleged discriminatory intent of the state actor.  "If any 'right' under federal law is 'clearly established,' it is the constitutional right to be free from racial discrimination."  *Williams v. Richland Cnty. Children Servs.*, 489 F. App'x 848, 854 (6th Cir. 2012).  Defendants cannot seriously argue that a reasonable university official would not have known that taking disciplinary action against a student based on racial animus was a violation of the student's rights to equal protection under the law.

As another basis for qualified immunity, Plaintiff argues that "there was no indication that Plaintiff was treated differently than any similarly situated graduate students or that either Dr. Schweikhart or Salimbene had knowledge of Plaintiff allegedly filing race discrimination

complaints." (Defs.' Mot., ECF No. 29 at PageID# 126.) But these are factual issues not appropriate for determination at the pleading stage, much less on the basis of qualified immunity. Plaintiff has alleged disparate treatment vis-à-vis white graduate students and has alleged Dr. Salimbene's knowledge of Plaintiff's complaint of race discrimination against Dr. Schweikhart. Plaintiff's allegations overcome Rule 12(b)(6) dismissal on qualified immunity grounds.

## IV.

Count VI of Plaintiff's amended complaint alleges a claim against Defendant OSU for race discrimination in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. Title VI generally provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

To state a Title VI claim against OSU, Plaintiff must plead intentional discrimination. *See Alexander v. Sandoval*, 532 U.S. 275, 280 (2001). Defendants argue that Plaintiff fails in this regard because she (1) pleads only conclusory allegations with regard to the University's conduct, (2) inappropriately attempts to impute discriminatory intent to the University through her allegations against the individual Defendants, and (3) fails to plead facts that rise to the level of discriminatory intent as it relates to allegations that the University failed to investigate Plaintiff's discrimination complaint against Dr. Schweikhart. None of these rationales, however, supports dismissal of Plaintiff's Title VI claim at the pleading stage.

As to the first argument regarding conclusory allegations, it is true that a plaintiff must plead facts that establish discriminatory intent. *Pocono Mtn. Charter Sch. v. Pocono Mtn. Sch. Dist.*, 442 F. App'x 681, 688 (3d Cir. 2011) (citing *Alexander v. Choate*, 469 U.S. 287, 293-94

(1985)). But the Court disagrees that the allegations in the amended complaint are "conclusory." Plaintiff alleges that the OSU "actively participated" in intentionally discriminatory conduct because the University's Committee of Academic Misconduct and University Conduct Board were motivated by discriminatory animus in their "official action" taken against Plaintiff. (Am. Compl. ¶¶ 91-92.) It remains to be seen whether Plaintiff can prove this weighty allegation against the University. Plaintiff has, however, alleged the requisite discriminatory intent required for a Title VI claim.

The Court is equally unpersuaded by Defendants' second and third arguments for dismissal. It is true that there is no vicarious liability under Title VI, meaning that OSU cannot be held liable for discrimination solely based on the conduct of the individual Defendants. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286-88 (1998); *see also Goonewardena v. New York*, 475 F. Supp. 2d 310, 328 (S.D.N.Y. 2007).[2] But the allegations in the amended complaint do not establish that Plaintiff is trying to hold the University liable for the allegedly discriminatory actions of Drs. Schweikhart and Salimbene in and of themselves. Plaintiff alleges that OSU was deliberately indifferent to Plaintiff's complaints of race discrimination by not only failing to properly investigate them but also by actively taking steps to cover up discrimination.[3] (Am. Compl. ¶¶ 24, 31, 93.) With these allegations, Plaintiff has pleaded the requisite discriminatory intent to survive dismissal of her Title VI claim.

---

[2] Although this case involves a Title VI claim, this Court applies the law set forth in *Gebser*, which involved Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ("Title IX"). The Supreme Court acknowledged in *Gebser* that the Title VI and Title IX statutes parallel one another. *Gebser*, 524 U.S. at 286 (recognizing that Title VI and Title IX parallel one another except that Title VI prohibits race discrimination while Title IX prohibits sex discrimination).

[3] Based on the Supreme Court's acknowledgment that deliberate indifference is sufficient to establish a claim of intentional discrimination under Title IX, and the fact that Title IX treatment has generally been based on the standards set forth for the enforcement of Title VI, the "deliberate indifference" standard would presumably apply to Title VI cases. *Vidovic v. Mentor City Sch. Dist.*, 921 F. Supp. 2d 775, 796 n.10 (N.D. Ohio 2013) (citing *Davis v. Monroe Cnty. Bd. of Edn.*, 526 U.S. 629, 642 (1999) and *Cannon v. University of Chicago*, 441 U.S. 677, 694-695 (1979)).

**V.**

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to dismiss and/or for qualified immunity.  (ECF No. 29.)  The Court **DISMISSES COUNT II** of Plaintiff's amended complaint, alleging § 1983 liability based on substantive due process and **DISMISSES** Defendant Metzlaars as a party to this action.  The Court **DENIES** Defendants' motion with respect to Counts I, III, and IV of the amended complaint.  Plaintiff's action may proceed on her claims based on First Amendment retaliation, equal protection, and Title VI of the Civil Rights Act.

**IT IS SO ORDERED**.

     /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE